Filed 11/18/25  P. v. Ramos CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>STEVE ERIC RAMOS,<br><br>    Defendant and Appellant. | 2d Crim. No. B335392<br>(Super. Ct. No. CR49399)<br>(Ventura County) |

Steve Eric Ramos petitioned for resentencing under Penal Code[1] section 1172.75.  The trial court dismissed two section 667.5, subdivision (b) enhancements but otherwise reimposed his original sentence.  The case is remanded for the trial court to calculate the days of actual custody and to correct the abstract of judgment.  In all other respects, the decision is affirmed.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

FACTS

A jury convicted Ramos of two counts of second-degree robbery in violation of section 211, for the robberies of Bank of America on April 20, 2000 (count 1), and California Federal Bank on May 25, 2000 (count 3). It also found that Ramos suffered three prior serious felony convictions, alleged for sentence enhancement and recidivist sentencing under the Three Strikes Law.  (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d).)

Ramos then pleaded guilty to possession of heroin and possession of cocaine (Health & Saf. Code, § 11350, subd. (a)); counts 4 and 5), counts that the trial court had severed from the robbery counts.  As part of a plea agreement, the court agreed to sentence Ramos as a second strike defendant regarding the drug offenses.  Ramos agreed to allow the court to determine the truth of the prior serious felony allegations.  The court found the allegations true but then dismissed two of the three prior serious felony allegations pursuant to section 1385, subdivision (a), and *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, concerning counts 4 and 5 only.

The trial court sentenced Ramos to two consecutive 25 year-to-life terms for counts 1 and 3, plus two consecutive five-year enhancements pursuant to section 667, subdivision (a).  It also sentenced him to two concurrent four-year terms for counts 4 and 5, for a total determinate term of 14 years.  The court stayed terms on two section 667.5, subdivision (b) enhancements.  The court later reduced Ramos' conviction on count 4 to a misdemeanor pursuant to section 1170.18.

*Section 1172.75*

In 2022, the California Department of Corrections and Rehabilitation (CDCR) identified Ramos as potentially eligible for

resentencing under section 1172.75. Ramos petitioned for resentencing under section 1172.75. Thereafter, Ramos was appointed counsel and filed a petition for resentencing. Ramos' petition was based on the theory that he had changed during more than 20 years of incarceration.

The trial court reviewed Ramos' criminal history and his conduct while in custody. The court noted Ramos was out of custody for only a very short period of time before committing the robberies. The robberies were violent and involved the use of a weapon.

As to Ramos' conduct in custody the trial court stated:

"I did note several rule violations while he was at the [CDCR] dating all the way back to 2004. And these instances included mutual combat with other inmates. In 2014, I believe he was violated for possession of an altered razor. In 2017, he was found in possession of a weapon. Again, in 2017 he and two other inmates battered another inmate. In 2020, a urinalysis was conducted of him and came back positive for opiates and morphine, I believe. And then this is, I think, probably the most minor rule violation, but again in 2017 he was violated for continuously using a sheet to obstruct the view into his cell. And while that is a minor rule violation, I am taking this into totality. . . . [¶] Given the conduct from which he was convicted and his criminal history, it does appear to be even after the conviction in the underlying case, there are instances of violence. There are instances of possession of weapons."

The trial court found that based on Ramos' history of violence and use of weapons prior to, and while in custody, he remains a danger to the public. The court dismissed the section

3

667.5, subdivision (b) enhancements, but otherwise imposed the same sentence.

## DISCUSSION

### *I. Section 1172.75*

### *(a) Statutory Scheme*

Section 1172.75, subdivision (a) provides: "Any sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of Section 667, except for any enhancement imposed for a prior conviction for a sexually violent offense as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code is legally invalid."

The secretary of the CDCR refers all those serving a term for such an enhancement to the trial court. (Section 1172.75, subd. (b).) The court must recall the sentence and resentence the defendant. (*Id.* at subd. (c).)

Section 1172.75, subdivision (d) provides in part (1)-(3) provides:

"(1) Resentencing pursuant to this section shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety. Resentencing pursuant to this section shall not result in a longer sentence than the one originally imposed.

"(2) The court shall apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing.

"(3) The court may consider postconviction factors, including, but not limited to, the disciplinary record and record of

4

rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice."

*(b) Analysis*

We review the trial court's finding that imposing a lesser sentence would endanger public safety under the clear and convincing evidence standard. (§ 1172.75, subd. (d)(1).) The clear and convincing evidence standard requires the party with the burden of proof to convince the trier of fact that it is " '. . . highly probable . . .' " the facts which he asserts are true. (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 998.) We review the record in a light most favorable to the prevailing party giving "deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Id.* at pp. 1011-1012.) We uphold the finding if any reasonable finder of fact could have found it highly probable that the fact was true. (*Id.* at p. 1011.)

Here Ramos has a lengthy history of violent conduct both out of and in prison. His conduct in prison shows he has learned nothing from his incarceration. As late as 2020, he tested positive for opiates and morphine. Although not a violent offense, it demonstrates his lack of judgment and self-control. Moreover, Ramos' drug use is undoubtedly related to his prior robberies. Clear and convincing evidence supports the trial court's determination that imposing a lesser sentence would endanger public safety.

Ramos relies on section 1170.18, subdivision (c), which provides, "As used throughout this code, 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667."

Section 667, subdivision (e)(2)(C)(iv) lists sexually violent offenses, sexual offenses against a child under 14 years of age, any homicide offense, solicitation to commit murder, assault with a machinegun on a peace officer or firefighter, possession of a weapon of mass destruction, and any serious or violent felony punishable by life imprisonment or death. These offenses are sometimes called "super strikes."

Ramos argues the trial court could not find an unreasonable risk that he will commit any of the listed offenses. But given that robbery can result in a homicide, the trial court may well conclude there is an unreasonable risk he will commit a homicide offense.

Assuming the trial court did not so find, Ramos' reliance on section 1170.18 is misplaced. Section 1170.18, subdivision (c) was enacted by the voters as part of Proposition 47. In *People v. Valencia* (2017) 3 Cal.5th 374, our Supreme Court considered whether the phrase "as used throughout this code" in section 1170.18, subdivision (c) means the narrow definition of danger to public safety in that subdivision, applies to a finding of danger to public safety in section 1170.126 subdivision (f). (*Valencia, supra*, 3 Cal.5th at pp. 360-364, 371.)

Section 1170.126 is part of the Three Strikes Reform Act of 2012, enacted by the voters as Proposition 36. A danger to public safety in section 1170.126, subdivision (f), as here, is not defined.

6

Our Supreme Court rejected the view that the definition of danger to public safety contained in section 1170.18, subdivision (c) applies beyond Proposition 47. The court pointed out that the primary purpose of Proposition 47 was reducing specified low-level felonies involving drugs and thefts to misdemeanors. (*Valencia*, *supra*, 3 Cal.5th at p. 360.) It did not purport to lower the sentences for other felonies. (*Ibid.*) In fact, Proposition 47 expressly assured voters that the sentences of those convicted of dangerous crimes would not change. (*Valencia*, *supra*, 3 Cal.5th at p. 374.)

The Supreme Court also stated: "In describing to voters Proposition 47's title and summary, the Attorney General failed to note or identify any effect the measure might have in facilitating the release of serious or violent recidivist felons. In describing to voters Proposition 47's effect on public safety, the criminal justice system, and fiscal policy, the Legislative Analyst also failed to note or identify any effect the measure might have in facilitating the release of serious or violent recidivist felons. [¶] . . . [¶] The statutory provisions imposed on the Attorney General and Legislative Analyst in order to educate voters about the effect of proposed initiatives and to protect them from being misled or confused, would have no meaning and would not serve their intended purpose of protecting the democratic process if we adopted the defendants' and the dissents' interpretation of Proposition 47. In that scenario we would be imputing to voters an intent that could not reasonably have existed, where even the Attorney General and Legislative Analyst, in advising voters, apparently were unaware of that professed intent." (*Valencia*, *supra*, 3 Cal.5th at pp. 374-375.)

7

Although much of our Supreme Court's reasoning, not cited here, involved the specifics of Propositions 36 and 47, the court concluded broadly, "[i]t is reasonable to interpret section 1170.18, subdivision (c)'s definition of an 'unreasonable risk of danger to public safety' as applicable only to the resentencing proceedings that are authorized under Proposition 47." (*Valencia, supra*, 3 Cal.5th at p. 375.)

The Supreme court's conclusion that section 1170.18 subdivision (c) applies only to Proposition 47 proceedings, means the subdivision does not apply here. In voting to reduce low-level drug and theft offenses from felonies to misdemeanors, the voters were not informed that they were voting to release dangerous felons. In fact, the voters were expressly assured that the sentences of those convicted of dangerous crimes would not change.

## II. Correcting the Abstract of Judgment

Ramos contends the abstract of judgment must be corrected.

For Ramos' determinate term the abstract of judgment lists two consecutive 5 year terms for prior felony convictions (§ 667, subd. rec'd (a)(1)) and a concurrent term of four years for possession of a controlled substance (Health & Saf. Code § 11350, subd. (a)). The abstract states the total time as 14 years. Ramos points out that because the four year term for possession of a controlled substance is concurrent, the total time should be stated as 10 years.

The People do not dispute Ramos' calculation. Instead, the People point out that a life sentence runs consecutively to a determinate term, and the determinate term is served first.

(§ 669.)  Because Ramos has served more than 14 years, the People argue that amending the abstract would be an idle act.

Nevertheless, the abstract is an official document and should accurately reflect Ramos' sentence.  We must reverse for a calculation of custody credits.  The trial court shall correct the abstract of judgment at the same time.

The parties agree that because Ramos' sentence was modified, the trial court erred in not calculating the actual days he spent in custody.  (§ 1900.1; *People v. Buckhalter* (2001) 26 Cal.4th 20, 37.)  The parties do not agree on the number of actual days.  We will leave it to the trial court to resolve the dispute on remand.

DISPOSITION

The matter is remanded for the trial court to correct the abstract of judgment and to calculate the actual days spent in custody.  In all other respects, we affirm.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.

CODY, J.

Marine Dermadzhyan, Judge

Superior Court County of Ventura

_____

Sylvia W. Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.